**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

```
------------------------------------------------------------------ X
TERRA TOWERS CORP. and TBS                 :   Civil Action No.: _____
MANAGEMENT, S.A.,                          :
                                           :
              Plaintiffs,                  :
     v.                                    :
                                           :
ADAM MICHAEL SCHACHTER, GELBER             :
SCHACHTER & GREENBERG, P.A.,               :
CONTINENTAL TOWERS LATAM HOLDINGS          :
LIMITED, TELECOM BUSINESS SOLUTION, LLC,   :
LATAM TOWERS, LLC, AMLQ HOLDINGS (CAY)     :
LTD., and DT HOLDINGS, INC.,               :
                                           :
              Defendants.                  :
------------------------------------------------------------------ X
```

## JOINT NOTICE OF REMOVAL

Defendants Telecom Business Solution, LLC and LATAM Towers, LLC (collectively, "Peppertree"), AMLQ Holdings (Cay) Ltd. ("AMLQ"), Adam Michael Schachter ("Mr. Schachter"), and Gelber Schachter & Greenberg, P.A. ("GSG"), pursuant to 9 U.S.C. § 205, remove the civil action filed on March 7, 2022, and pending in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, 2022-004317-CA-01 (the "Action"), on the basis of federal question jurisdiction under the New York Convention. The relevant parties to the Action are currently involved in an open and active international arbitration in New York, New York pursuant to an arbitration agreement that falls under the Convention and squarely covers this Action. Accordingly, and for the reasons discussed below, the Action is subject to removal under the New York Convention.

I.      BACKGROUND

      A.      **Background Regarding the Parties' Relationship and Governing Documents**

1.      Peppertree Capital Management, Inc. ("PCMI") is an Ohio-based private equity firm with more than $2 billion in assets under management. PCMI is one of the most successful and experienced investors in the communication infrastructure industry in the United States. It has participated in more than 100 communication infrastructure investments since 2004, most of which involve the development or acquisition of wireless communication towers. In 2014 and 2015, PCMI invested in the two Peppertree-Defendant companies, Telecom Business Solutions, LLC and LATAM Towers, LLC, both of which are created and organized under the laws of Delaware.

2.      Defendant AMLQ is a Cayman Island Exempted Company Limited By Shares. It is an affiliate of Goldman Sachs & Co. LLC, a leading investment banking, securities, and investment management firm and, like Peppertree, has extensive experience in communication infrastructure investments.

3.      Plaintiffs Terra Towers Corp. ("Terra Towers") and TBS Management, S.A. ("Terra TBS," and together with Terra Towers, "Terra") and "Defendant" DT Holdings, Inc. ("DTH") are owned and controlled by Jorge Hernandez, a Guatemalan entrepreneur involved in telecommunications, real estate, services, and technology projects. Terra and DTH both have a local presence in the communication infrastructure industry in South America and Central America, where they build towers and other communication infrastructure. Terra Towers is a company incorporated in the British Virgin Islands; Terra TBS is a *sociedad de responsibilidad limitada* organized under the laws of Panama; and DTH is incorporated in Panama.

4.      In a series of transactions in 2014 and 2015, Peppertree and AMLQ contributed approximately $125 million in cash to join Terra as shareholders in Continental Towers Latam

Holdings Limited (the "Company"), a telecommunications infrastructure company based in Central America and incorporated in the British Virgin Islands. The parties' percentage ownership of the Company is as follows: (1) Terra: 54.45%; (2) Peppertree: 32.2%; and (3) AMLQ: 13.35%.

5.      On October 22, 2015, in connection with Peppertree's and AMLQ's investment in the Company, the parties entered into a set of governing documents, including a Shareholders Agreement and a Development Agreement. As provided by the governing documents, virtually all Company actions—including the appointment and removal of Company executives and engagement of Company counsel—require Board approval. *See* Ex. B (Shareholders Agreement) § 4.04. The Board may only act via a majority vote or unanimous written consent of all Directors. *Id.* § 4.03(d). At all relevant times, the Company's Board has been comprised of four Directors—two appointed by Peppertree, and two appointed by Terra.

6.      The Shareholders Agreement further provides, in pertinent part, that "any Dispute . . . will be finally settled by binding arbitration." *Id.* § 8.15 (the "Arbitration Agreement"). This provision broadly applies to "any controversy, claim or dispute arising out of or relating to or in connection with [the Shareholders] Agreement." *Id.* § 8.14. The Shareholders Agreement further specifies that "[t]he seat of the arbitration shall be New York, New York" and that "arbitration shall be conducted by three arbitrators," and it creates a party-appointed arbitrator system which is used to select the three-arbitrator panel. *Id.* § 8.15.

7.      On a systems and operations basis, the Company is contractually dependent upon DTH for much of its operating capability. As such, some members of the Company's management team are primarily employees and agents of DTH. The Company pays DTH a monthly fee for these personnel and other services, as set forth in the Development Agreement,

to which Terra, DTH, and the Company are parties. Ex. C (Development Agreement) § 1.1(f). The Development Agreement expressly incorporates the Arbitration Agreement in the Shareholders Agreement. *Id.* § 3.4.

### B. The Arbitration

8. On February 2, 2021, in response to Terra's various breaches of the Shareholders Agreement, Peppertree filed a Demand for Arbitration and Statement of Claims with the International Centre for Dispute Resolution of the American Arbitration Association against Terra, DTH, and affiliated individuals.

9. On February 19, 2021, Terra asserted various counterclaims against Peppertree, as well as claims against AMLQ, which AMLQ countered on March 25, 2021.

10. Shortly thereafter, Terra insisted that Jorge Gaitán, in his capacity as the Company's Chief Executive Officer, engage Adam Schachter, a partner at Gelber, Schachter & Greenberg ("GSG"), as Company counsel in the Arbitration. When Mr. Schachter initially appeared in the Arbitration in early March 2021, Peppertree disputed his engagement because he was engaged without the requisite Board approval. Subsequently, Peppertree's and AMLQ's counsel interviewed Mr. Schachter to confirm his qualifications and independence and ultimately agreed to his engagement.

11. On March 19, 2021, Mr. Schachter circulated a letter that was countersigned by all counsel in the Arbitration and Mr. Gaitán (the "Framework Agreement"). The Framework Agreement set forth "a general framework under which [Mr. Schachter's] firm will serve as independent counsel for [the Company]" in the Arbitration. Ex. A-2 (Framework Agreement) at 1.[1] The parties to the Arbitration—including Terra—agreed that Mr. Schachter and his firm

---

[1] In accordance with 28 U.S.C. § 1446(a), copies of all process, pleadings, and orders served on Defendants in the Action are attached hereto and labeled as Ex. A-1, Ex. A-2, Ex. A-3, etc. according to

"will be reporting to Mr. Gaitán directly" and "will be taking [their] instructions from Mr. Gaitán only." *Id.* The parties—including Terra—also agreed that "Mr. Gaitán will be acting independently and in the best interests of the [C]ompany" in this Arbitration. *Id.* The parties—including Terra—further agreed that the Company would "preserve its status as a nominal and neutral party" in this Arbitration, and that it would "not be aligned with any of the parties in this case." *Id.* at 2.

12. By August 2021, Terra and DTH became frustrated that Messrs. Schachter and Gaitán had honored the representation in the Framework Agreement regarding the Company's neutrality and nominal role, rather than supporting Terra/DTH's positions in the Arbitration. In response, Terra/DTH launched a campaign of intimidation and harassment designed to terminate and/or constructively discharge Mr. Gaitán and remove independent Company counsel. For example, Terra representatives shut down Mr. Gaitán's email access, searched his car and electronic devices, held him captive for hours, and directed that a DTH loyalist take over his duties and roles in the Company's management structure, all in retaliation for not supporting Terra/DTH's litigation positions in the Arbitration.

13. On October 11, 2021, counsel for the Company submitted a letter bringing to the Tribunal's attention Terra/DTH's ongoing harassment campaign, including attempts to remove Mr. Gaitán from his position at the Company, which were undertaken without the authorization of the Company's Board. On October 15, 2021, Peppertree/AMLQ submitted an emergency motion for expedited interim relief (the "Emergency Motion") to the Tribunal in which they sought an order preventing Terra/DTH from terminating Mr. Gaitán without Board approval.

---

their docket number in the Action. Terra's Complaint, which attached the Framework Agreement, is attached as Ex. A-2.

14. On November 12, 2021, following multiple rounds of expedited briefing and a four-hour evidentiary hearing, the Tribunal—comprised of three highly experienced and qualified arbitrators—granted interim relief in the form of an injunction requiring that DTH "immediately restore Jorge Gaitán to the Company position[] [he] occupied as of March 19, 2021." In issuing this Order, the Tribunal "accepted that as of March 19, 2021, the CEO of the Company was Jorge Gaitán, and that this status was accepted by and accurately reflected in a letter of that date from [GSG] that was counter-signed by all counsel in this arbitration and Mr. Gaitán and therefore became a binding agreement among the parties."

15. Around that time, Terra, which controls the daily operations of the Company, including any payments made by the Company, caused the Company to stop paying Mr. Schachter's firm, GSG, in an effort to remove them as independent Company counsel.

16. After Mr. Schachter raised the issue, on December 8, 2021, the Tribunal ordered the Company to pay GSG's attorneys' fees. The Tribunal further ordered that "[i]f [Terra/DTH] wish to seek the removal of Mr. Schachter and his firm as counsel for the Company in the arbitration by action of the Board, [Terra] shall present a resolution to the Board seeking approval of such action." Terra never submitted any such resolution to the Board, and the Board never voted to remove Mr. Schachter as Company counsel.

17. Terra instead purported to unilaterally engage new—but clearly not independent—counsel for the Company. On December 15, 2021, Fridman Fels filed a Notice of Appearance, in which they purported to appear on behalf of the Company in this Arbitration. Their purported retention as Company counsel was never presented to the Company's Board for its consideration.

18. The Tribunal then invited the parties to make submissions related to Fridman Fels' purported Notice of Appearance. Terra argued in its submission that the Framework Agreement, which outlined GSG's representation of the Company in the Arbitration, had "since been repudiated by Terra" due to "mutual mistake"—namely, that "undersigned counsel to the Framework Agreement mistakenly believed at the time of its execution that Mr. Gaitán was in fact the CEO of the Company and therefore, as a member of the Company's Executive Team, had the authority to engage counsel for the Company."

19. On December 23, 2021, after receiving submissions from the parties, the Tribunal issued an order rejecting this Notice and finding that "engagement of counsel for this arbitration is within the powers of the Company's Board under Section 4.04(a) [of the Shareholders Agreement]." The Tribunal further held that GSG was properly engaged "by unanimous written consent of the Board of Directors of the Company," and that "a change in Company counsel . . . should be decided by the Board."

20. To date, Terra/DTH have refused to reaffirm Mr. Gaitán's role with the Company, in direct violation of the Tribunal's November 12 Order.  And in the latest attempt to oust Company counsel, Terra has again caused the Company to fail to pay GSG's invoices, in direct violation of the Tribunal's December 8 and December 23 Orders.  A motion concerning Terra/DTH's non-compliance with these orders has been fully briefed and ***remains pending*** before the Tribunal.[2]

---

[2] Meanwhile, on February 24, 2022, the Tribunal issued a partial final award, granting Peppertree/AMLQ's claim for specific performance of a forced sale provision of the Shareholders Agreement (the "Partial Final Award").  On March 3, Peppertree/AMLQ filed a petition to confirm the Partial Final Award, which is pending in the Southern District of New York. *See Telecom Business Solution, LLC v. Terra Towers Corp.*, No. 22-cv-01761 (S.D.N.Y.) (the "Southern District of New York Action").  On April 1, Terra filed a cross-motion to vacate it.

-7-

### C. The Florida State Court Action

21. On March 7, 2022—in yet another attempt to oust independent counsel—Terra filed the instant Action in Florida state court, challenging the Framework Agreement in which the Company's Board and shareholders authorized the retention of GSG and Mr. Schachter. Ex. A-2 (Compl.). Terra named as defendants all parties to the Framework Agreement, which include Peppertree, AMLQ, GSG, Mr. Schachter, the Company, and Terra's affiliate and fellow respondent in the Arbitration, DTH. Curiously, Terra identified **its own affiliate**, DTH, as a defendant to the litigation rather than as a co-plaintiff, even though Terra and DTH have been aligned throughout these proceedings, frequently making joint submissions in the Arbitration and even sharing counsel in certain matters.

22. Counsel for Peppertree and AMLQ agreed to accept service of the Complaint on March 18, 2022, in exchange for an extension of their responsive pleading deadline to April 21, 2022. *See* Ex. D.

## II. GROUNDS FOR REMOVAL

### A. Removal Is Proper Under the New York Convention

23. The undersigned defendants seek removal under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, commonly known as the "New York Convention," an international, multi-lateral agreement that requires signatory nations to give effect to private arbitration agreements and enforce arbitration awards in other contracting nations. *See* United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 21 U.S.T. 2517 (June 10, 1958). The United States has codified its agreement to the terms of the New York Convention in Chapter 2 of the Federal Arbitration Act. *See* 9 U.S.C. §§ 201–08.

24. The New York Convention provides an "exceptionally broad removal right" for matters filed in state court that may fall within the ambit of the Convention: "where the subject matter of an action . . . pending in a State court relates to an arbitration agreement . . . falling under the Convention, the defendant . . . may, at any time before the trial thereof, remove such action or proceeding to the district court of the United States." *Key Motors Ltd. v. Hyundai Motor Co.*, 2016 WL 7364756, at *3 (S.D. Fla. Oct. 31, 2016) (quoting 9 U.S.C. § 205); *see also Hodgson v. Seven Seas Cruises*, 2020 WL 6120478, at *2 (S.D. Fla. Mar. 27, 2020).

25. Removal is proper under Section 205 where: (i) "the notice of removal describes an arbitration agreement that may 'fall under the Convention'"; and (ii) "there is a non-frivolous basis to conclude that the agreement sufficiently 'relates to' the case before the court such that the agreement to arbitrate could conceivably affect the outcome of the case." *Hodgson*, 2020 WL 6120478, at *2 (citing *Outokumpu Stainless USA, LLC v. Converteam SAS*, 902 F.3d 1316, 1324 (11th Cir. 2018)).

### i. The Arbitration Agreement Falls under the Convention

26. For the first prong, the removing party need only articulate a "non-frivolous" basis that: "(1) there is an agreement in writing within the meaning of the Convention; (2) the agreement provides for arbitration in the territory of a signatory to the Convention; (3) the agreement to arbitrate arises out of a commercial legal relationship; and (4) a party to the agreement is not an American citizen." *Hodgson*, 2020 WL 6120478, at *2 (citing *Outokumpu*, 902 F.3d at 1324 and *Bautista v. Star Cruises*, 396 F.3d 1289, 1295 (11th Cir. 2005)).

27. The Arbitration Agreement easily satisfies all four factors. ***First***, Terra, Peppertree, AMLQ, and the Company are parties to the Shareholders Agreement containing the Arbitration Agreement. *See Ytech 180 Units Miami Beach Invs. LLC v. Certain Underwriters at Lloyd's, London*, 359 F. Supp. 3d 1253, 1261-62 (S.D. Fla. 2019) ("an arbitral clause in a

contract . . . signed by the parties" satisfies the agreement-in-writing requirement). Terra, DTH, and the Company are also signatories to the Development Agreement, which specifically incorporates the Arbitration Agreement by reference. That Mr. Schachter and GSG, as counsel, are *not* signatories to the Arbitration Agreement is neither surprising nor relevant for removal purposes. *See Hodgson*, 2020 WL 6120478, at *3 (rejecting argument that first factor was not met where arbitration agreements had not been signed by *all* Parties to the litigation); *Outokumpu*, 902 F.3d at 1320 (explaining that the agreement-in-writing factor is satisfied if the arbitration agreement was signed by *a* party to the litigation, and that the signature of *all* parties to a case is not required for removal purposes).

28.     *Second*, the Arbitration Agreement provides for arbitration to take place in the United States (New York, New York), a signatory to the Convention. *See* 9 U.S.C. § 201.

29.     *Third*, the Arbitration Agreement arises out of a commercial legal relationship, *i.e.*, an agreement among shareholders of the Company, which was formed with the commercial purpose of "developing, owning, acquiring, and operating telecommunications towers in various locations across Central and South America." Ex. A-2 (Compl.) ¶ 17.

30.     *Fourth*, several parties to the Arbitration Agreement are not American citizens: Terra Towers is incorporated in the British Virgin Islands, *id.* ¶ 6; Terra TBS is organized under the laws of Panama, *id.* ¶ 7; DTH is incorporated in the Republic of Panama, *id.* ¶ 14; and AMLQ is incorporated in the Cayman Islands, *id.* ¶ 13. Accordingly, the Arbitration Agreement falls under the Convention.

### ii.     The Action Relates to the Arbitration Agreement

31.     As to the second prong—whether the Arbitration Agreement "relates to" the matter before the Court—that requirement "should be construed liberally." *Hodgson*, 2020 WL 6120478, at *3 (citing *Outokumpu*, 902 F.3d at 1323-34). "[A]s long as the argument that the

-10-

case 'relates to' the arbitration agreement is not immaterial, frivolous, or made solely to obtain jurisdiction, the relatedness requirement is met for purposes of federal subject matter jurisdiction." *Id.*; *see also Beiser v. Weyler*, 284 F.3d 665, 671-72 (5th Cir. 2002) ("[A]bsent the rare frivolous petition for removal, as long as the defendant claims in its petition that an arbitration clause provides a defense, the district court will have jurisdiction to decide the merits of that claim.").

32. This Action not only "relates to" the Arbitration Agreement; it falls squarely within its terms. As an initial matter, Terra itself acknowledges that "the Complaint . . . is *related to* a matter which arises under the Federal Arbitration Act," which alone resolves the inquiry. *See* Ex. A-3 (Notice of Filing Arising from International Commercial Arbitration) ¶ 1.

33. What is more, the Complaint challenges the Framework Agreement in which the Board and shareholders authorized the retention of GSG and Mr. Schachter as counsel for the Company in the Arbitration. Furthermore, the Arbitration Tribunal has already addressed—and continues to address—this very issue in its December 23 Order expressly holding that GSG's retention was properly authorized by the Board via the Framework Agreement. Indeed, the Complaint raises the very same arguments that Terra/DTH have already raised in the Arbitration and that have been expressly, repeatedly, and unanimously *rejected* by the Tribunal. *Compare, e.g.*, Ex. A-2 (Compl.) ¶ 5 ("Plaintiffs now respectfully request that this Court use its equitable powers to rescind the Framework Agreement."), *with* Dec. 23 Order ¶ 2 ("The Tribunal . . . accepted that as of March 19, 2021, . . . [the Framework Agreement] became a binding agreement among the parties."); *and* Ex. A-2 (Compl.) ¶ 40 ("At the time of the Framework Agreement's execution, Plaintiffs and Defendants erroneously believed that Gaitán was the Company's CEO and a member of the Executive Team."), *with* Dec. 23 Order ¶ 2 ("[A]s of

March 19, 2021, the CEO of the Company was Jorge Gaitán, and . . . this status was accepted by and accurately reflected in [the Framework Agreement]."). Indeed, the latest additional motion practice concerning Terra/DTH's non-compliance with the Tribunal's December 23 Order is currently pending before the Tribunal.

34. The Tribunal has further ruled that "a dispute between the shareholders over who should represent the Company as arbitration counsel in this arbitration"—the central dispute raised by the Complaint—is "squarely within [its] jurisdiction." Such a dispute, the Tribunal determined, "arise[s] out of the Shareholders Agreement" and "relates to the trajectory of this arbitration and how the positions of the parties will be presented." Specifically, the Shareholders Agreement requires Board approval before the Company may enter into any agreement, including an agreement to engage counsel for the Company. Section 4.04(a) explicitly authorizes the Board "to make any and all contracts and decisions, enter into transactions and make and obtain any commitments on behalf of the Company to conduct or further its business." Ex. B (Shareholders Agreement) § 4.04(a). Because engaging counsel on behalf of the Company is simply one type of contract the Company can make, engagement of Company counsel is an activity that is reserved for the Board. Additionally, pursuant to Section 4.04(a)(xviii), the Board must approve "entry by the Company . . . into any agreement . . . not included in the Annual Budget," which would include any agreement to engage counsel for the Company. *Id.* § 4.04(a)(xviii). As a result, the engagement of Company counsel falls under the Arbitration Agreement, which broadly applies to "any controversy, claim or dispute arising out of or relating to or in connection with [the Shareholders] Agreement." *Id.* § 8.14.

35. For those reasons, this Action directly relates to ongoing disputes in the Arbitration, and removal is proper under the New York Convention.

## III. COMPLIANCE WITH REMOVAL REQUIREMENTS

### A. All Necessary Defendants Have Consented to Removal

36. As a general matter, "all defendants who have been properly joined and served must join in or consent to the removal of the action." 28 U.S.C. § 1446(b)(2)(A). Here, the necessary defendants—including Peppertree, AMLQ, GSG, and Mr. Schachter—have consented to removal. Neither DTH's nor the Company's consent to removal is required because (i) DTH is affiliated with and otherwise aligned with Terra, and (ii) as nominal parties to the Action, neither DTH's nor the Company's consent matters for removal purposes.

37. Complete unanimity is not required where a defendant, like DTH, has adverse interests and should be properly realigned with plaintiffs. Under these circumstances, "the court must determine whether a party's interests in this case are aligned with plaintiffs, thus making its consent to removal unnecessary." *Perlin v. Bank of Am., N.A. as Tr. of Joan K. Perlin Revocable Tr.*, 2022 WL 703936, at *4 n.4 (S.D. Fla. Mar. 9, 2022) (internal citations and quotation marks omitted)); *see also St. Paul Fire & Marine Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 890 F.3d 1265, 1267 (11th Cir. 2018) (holding that courts have a duty "to look beyond the pleadings, and arrange the parties according to their sides in the dispute"); *Murphy v. Charter Oak Fire Ins. Co.*, 166 F. Supp. 3d 1311, 1314 (S.D. Fla. 2015) (noting that the court is "required to realign the parties in an action to reflect their interests in the litigation").

38. In evaluating the alignment of the parties, courts in this Circuit apply the "primary purpose" test: "if the interests of a party named as defendant coincide with those of a plaintiff in relation to the purpose of the lawsuit, the named defendant must be realigned as plaintiff for jurisdictional purposes." *Wheeler's Moving & Storage, Inc. v. Markel Ins. Co.*, 2011 WL 3419633, at *2 (S.D. Fla. Aug. 4, 2011); *see also Perlin*, 2022 WL 703936, at *3 (realigning defendant who "would reap the benefits" if plaintiff prevailed).

39. Here, there is no daylight between Terra's and DTH's interests. DTH, by its own admissions, fully supports the "primary purpose" of Plaintiffs' Complaint: "the recission of [the Framework Agreement]." Ex. A-2 (Compl.) ¶ 1. In its Answer filed in this litigation, DTH *admits*, for example, that "it would be inequitable to compel **Plaintiffs** to continue to be bound by the Framework Agreement," Ex. A-27 (DTH Ans.) ¶ 48; that "the Framework Agreement is unenforceable based on mutual mistake, or in the alternative, unilateral mistake or fraud in the inducement," *id.* ¶ 52; that "Schachter and GSG should be enjoined from taking any further direction from Gaitán pursuant to the Framework Agreement," *id.* ¶ 54; that "***Terra*** has been irreparably injured, and absent an injunction, will continue to be injured by GSG and Mr. Schachter's illegitimate representation of the Company," *id.* ¶ 55; and that "[i]t is in line with Florida's public policy to bar Schacter and GSG from taking further instruction from Gaitán," *id.* ¶ 56. In sum, DTH inherently concedes that its interests are perfectly aligned with Plaintiffs.

40. Such admissions come as no surprise, given Terra/DTH's joint position in the ongoing Arbitration. As set forth above, Terra and DTH, which are under common ownership, have engaged in a months' long concerted effort to terminate and/or constructively discharge Messrs. Schachter and Gaitán. In fact, all their correspondence, submissions, and oral arguments in the Arbitration have been made *jointly* on behalf of *both* parties.

41. Moreover, Terra's counsel, Juan Rodriguez, executed the Framework Agreement in his capacity as "Counsel for Terra Towers Corp., TBS Management, S.A. ***and DT Holdings Inc***." Ex. A-2 (Framework Agreement) at 4 (emphasis added). Thus, at the time the Framework Agreement was executed, *Terra and DTH were represented jointly by the same lawyer*, who signed that Agreement on behalf of *both* entities. And most recently, counsel George Kroup filed a declaration in the Southern District of New York Action as "counsel of record for [Terra]

*and DTH Holdings, Inc*." *Telecom Business Solution*, No. 22-cv-01761, Dkt. 31, ¶ 3 (emphasis added). Against this backdrop, DTH must be properly realigned as a plaintiff, whose consent to removal is not required.

42. Separately, neither DTH's nor the Company's (nor its counsel's) consent is necessary for removal because they are nominal parties to the Action. "[N]ominal or formal parties, being neither necessary nor indispensable, are not required to join in the petition for removal." *Smith v. Health Ctr. of Lake City, Inc.*, 252 F. Supp. 2d 1336, 1338 n.5 (M.D. Fla. 2003). "The ultimate test of whether the defendants are indispensable parties is whether in the absence of the defendant, the Court can enter a final judgment consistent with equity and good conscience which would not be in any way unfair or inequitable to plaintiff." *Id* (quotation omitted). There is no question that Terra could obtain fair and equitable relief without DTH in this Action, given that the Complaint does not allege any wrongdoing on DTH's part or seek any relief from DTH. *See Brannigan v. Bank of Am. Corp.*, 2013 WL 6510787, at *2 (N.D. Ga. Dec. 12, 2013) (finding party was "nominal" where "there [were] no allegations against or requests for relief from [the party] in the Amended Complaint" and thus the "Court c[ould] enter a judgment without prejudicing Plaintiffs"). Moreover, DTH has no input over whom the Company retains as counsel or any other Company decisions because it is neither a Company Board member nor a shareholder. *See* Ex. B (Shareholders Agreement) § 4.04(a) (authorizing *the Board* "to make any and all contracts and decisions, enter into transactions and make and obtain any commitments on behalf of the Company to conduct or further its business"); *id.* § 4.04(a)(xviii) (providing that *the Board* must approve "entry by the Company . . . into any agreement . . . not included in the Annual Budget," which would include any agreement to

engage counsel for the Company). Because the Framework Agreement would be valid without DTH's authorization and signature, DTH is entirely irrelevant to the resolution of the Complaint.

43. The Company is a nominal party for the same reasons. The Company is a closely held corporation that acts through its Board, which is comprised of representatives of Peppertree and Terra. As with DTH, the Complaint cannot seek any relief from the Company because only the Board has the authority to engage Company counsel and bind the Company to contracts.[3]

### B. Removal Is Timely

44. This Notice of Removal is timely filed in accordance with 9 U.S.C. § 205, which provides that "an action or proceeding pending in a State court [that] relates to an arbitration agreement or award falling under the Convention" may be removed to federal court "*at any time*" before the trial of the underlying state court action. *See also Sheinberg v. Princess Cruise Lines, Ltd.*, 269 F. Supp. 2d 1349, 1351-52 (S.D. Fla. 2003) (noting that the standard 30-day removal time-limit does not apply to removals under the Convention). Because no trial has taken place, removal is timely under 9 U.S.C. § 205.

### C. Removal to This District Is Proper

45. Removal to this Court comports with Section 205's requirement that the action be removed "to the district court of the United States for the district and division embracing the place where the action or proceeding is pending." 9 U.S.C. § 205. Plaintiffs filed their Complaint in the Eleventh Judicial Circuit Court in and for Miami-Dade County Florida, which is located within the Miami Division of the Southern District of Florida.

---

[3] By the same token, Mr. Schachter and GSG are also nominal defendants (who have nonetheless consented to removal) because they have no authority to appoint the Company CEO or Company counsel. The Framework Agreement is not an engagement letter between the Company and Mr. Schachter/GSG; it is fundamentally an agreement among the Company's Board and shareholders regarding the parameters for engaging Company counsel. Accordingly, whether Mr. Schachter and GSG were properly engaged—the central issue in this Action—is a dispute between Terra and Peppertree/AMLQ, with the remaining parties serving a nominal role.

### D. The Undersigned Defendants Will Contemporaneously Serve All Parties with Notice of Removal

46. Pursuant to 28 U.S.C. §1446(d), copies of this Notice of Removal are being concurrently served upon counsel for Plaintiffs and filed with the Clerk of Court of the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida. The giving of such notice to the State Court "shall effect the removal and the State court shall proceed no further unless and until the case is remanded." 28 U.S.C. § 1446(d).

## IV. RESERVATION OF RIGHTS

47. In filing this Notice of Removal, the undersigned defendants do not waive and expressly reserve any rights, remedies, defenses, exceptions, and motions that may be available to them in this Court, including but not limited to challenges to personal jurisdiction and proper venue for this action. *See, e.g.*, *Kostelac v. Allianz Glob. Corp. & Specialty AG*, 517 F. App'x 670, 675 n.6 (11th Cir. 2013) ("The removal of an action from state to federal court does not waive any Rule 12(b) defenses."). No statement or omission in this Notice should be deemed an admission of any of the allegations or the damages sought in the Complaint.

48. The undersigned defendants reserve the right to amend, supplement, or correct this Notice of Removal as permitted by law.

WHEREFORE, the action previously filed in the Eleventh Judicial Circuit in and for Miami-Dade County, Florida is hereby removed to the United States District Court for the Southern District of Florida.

Dated:  April 18, 2022                                                        Respectfully submitted,

By: */s/ Roberto Martínez*                  By: */s/ Marcos D. Jiménez*
Roberto Martínez                                  Marcos D. Jiménez
Florida Bar No. 305596                 Florida Bar No. 441503
Stephanie A. Casey                     **MARCOS D. JIMÉNEZ, P.A.**
Florida Bar No. 97483                  255 Alhambra Circle
**COLSON HICKS EIDSON, P.A.**     Coral Gables, FL 33134
255 Alhambra Circle, Penthouse       Phone: (305) 570-3249
Coral Gables, Florida 33134            mdj@mdjlegal.com
Phone: (305) 476-7400
bob@colson.com                         *Counsel for Defendants Telecom Business*
scasey@colson.com                    *Solution, LLC; LATAM Towers, LLC; and*
                                              *AMLQ Holdings (Cay), Ltd.*

*Counsel for Adam Michael Schachter and Gelber Schachter & Greenberg, P.A.*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on April 18, 2022, I shall cause a copy of the foregoing by Electronic Mail to be served on the following:

John F. Baughman
jbaughman@jfblegal.com

George W. Kroup
gkroup@jfblegal.com

Juan J. Rodriguez
jrodriguez@careyrodriguez.com

Jennifer M. Hernandez
jhernandez@careyrodriguez.com

*Counsel for Terra Towers Corp. and TBS Management, S.A.*,

and

Allan A. Joseph
ajoseph@fidjlaw.com

*Counsel for DT Holdings, Inc.*


*/s/ Marcos D. Jiménez*
Marcos D. Jiménez
**MARCOS D. JIMÉNEZ, P.A.**
255 Alhambra Circle
Coral Gables, FL 33134
Phone: (305) 570-3249
mdj@mdjlegal.com