UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
TERRA TOWERS CORP., et al.,

                Plaintiffs,

              -against-                             22-cv-6150 (LAK)

ADAM MICHAEL SCHACHTER, et al.,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OPINION**

Appearances:

                              Juan J. Rodriguez
                              CAREY RODRIGUEZ MILIAN, LLP
                              *Attorney for Plaintiffs*

                              Gregg L. Weiner
                              Daniel V. Ward
                              Andrew S. Todres
                              ROPES & GRAY LLP
                              *Attorneys for Defendant AMLQ Holdings (Cay), Ltd.*

                              David A. Landman
                              Michael N. Ungar
                              Katherine M. Poldneff
                              ULMER & BERNE LLP
                              *Attorneys for Defendants Latam Towers, LLC, Telecom Business Solution, LLC*

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:   04/01/25

LEWIS A. KAPLAN, *District Judge.*

           This is an action seeking rescission of a contract retaining defendants Adam Schachter

("Schachter") and Gelber Schachter & Greenberg, P.A. ("GSG") as counsel for defendant

Continental Towers LATAM Holdings Limited ("Continental Towers" or the "Company"). Pending

2

before the Court are a motion to compel arbitration filed by defendants Telecom Business Solution, LLC and LATAM Towers, LLC (collectively, "Peppertree"), and AMLQ Holdings (Cay) Ltd. ("AMLQ"), Schachter and GSG,[1] and (4) motions to dismiss respectively filed by Schachter and GSG,[2] Peppertree,[3] and AMLQ.[4]

## *Background*

Continental Towers develops, owns, acquires, and operates telecommunications towers across Central and South America.[5] In October 2015, plaintiffs (collectively, "Terra") entered into a shareholders agreement ("SHA") with defendants Peppertree and AMLQ. Pursuant to the SHA, Terra became the majority shareholder of the Company, and Peppertree and AMLQ became minority shareholders.[6] The SHA includes an arbitration clause ("Arbitration Agreement"), which states that disputes "arising out of or relating to or in connection with" the SHA will be settled by

---

[1]     Dkt 17.

[2]     Dkt 6.

[3]     Dkt 12.

[4]     Dkt 13.

[5]     Dkt 31-4 ("Compl.") ¶ 17.

[6]     Dkt 17-1 at 6–60.

3

binding arbitration.[7]   On February 2, 2021, Peppertree and AMLQ commenced an arbitration alleging that Terra had breached the SHA.

This litigation is closely related to a parallel litigation before this Court arising out of the arbitration.  There, Peppertree and AMLQ have sought to confirm arbitration awards issued by a three-arbitrator panel (the "Panel").[8]   To date, the Court has issued orders confirming four partial final awards issued by the Panel.  A motion to confirm a fifth partial final award issued by the Panel is pending.

Plaintiffs allege that, on March 9, 2021, Schachter and GSG were retained to represent the Company in the arbitration by Jorge Gaitan Castro ("Gaitan").[9]  The SHA states that "the initial Chief Executive Officer [of the Company] shall be Jorge Gaitan Castro."[10]  The parties dispute whether Gaitan held that role at the time he retained Schachter and GSG.  On March 19, 2021, Schachter and GSG distributed a letter agreement to Terra, Peppertree, and AMLQ outlining the framework under which they would serve as counsel for the Company in the arbitration ("Framework Agreement").[11]  Attorneys for Terra, Peppertree, and AMLQ respectively signed the Framework Agreement.

---

[7] Dkt 17-1 at 55.

[8] See, e.g., *Telecom Bus. Sol., LLC v. Terra Towers Corp.*, No. 22-CV-1761 (LAK), 2023 WL 257915 (S.D.N.Y. Jan. 18, 2023), *aff'd*, No. 23-144, 2024 WL 446016 (2d Cir. Feb. 6, 2024).

[9] Compl. ¶ 21.

[10] Dkt 17-1 at 30.

[11] Compl. Ex. A.

On November 12, 2021, the Panel issued an interim order that, *inter alia*, recognized that Gaitan was the CEO of the Company as of the date of the Framework Agreement.[12] On November 22, 2021, Terra moved for reconsideration of the interim order, arguing that Gaitan had been removed as CEO in 2016.[13] On the same day, Terra sent a letter to Schachter advising him that the Framework Agreement was void and without effect or, alternatively, that Terra withdrew from the Framework Agreement.[14] On December 8, 2021, the Panel denied the motion for reconsideration.[15]

On December 16, 2021, the Panel directed the parties to submit written comments concerning the Company's retention of counsel after attorneys from the law firm Fridman Fels & Soto issued a purported notice of appearance on behalf of the Company.[16] On December 20, 2021, counsel for Terra filed a response stating that Terra had repudiated and withdrawn from the Framework Agreement because Terra mistakenly believed at the time of its execution that Gaitan was the CEO of the Company.[17]

On December 23, 2021, the Panel ruled that the shareholders of the company, including Terra, had approved the retention of Schachter and GSG by signing the Framework

---

[12]    Dkt 17-1 at 539–40.

[13]    *Id.* at 546.

[14]    Compl. ¶ 35.

[15]    Dkt 17-1 at 555.

[16]    *Id.* at 567.

[17]    *Id.* at 563.

Agreement.[18]  The Panel further held that the shareholders had "ratified and acquiesced in the GSG engagement" for at least five months during the arbitration.[19]

On March 7, 2022, Terra filed the instant litigation in Florida state court.  The allegations in the complaint mirror the arguments made in Terra's December 20 submission to the Panel — that the Framework Agreement was void on the grounds of unilateral mistake as to Gaitan's position in the Company at the time of the agreement.

On April 18, 2022, Peppertree, AMLQ, Schachter, and GSG filed a notice of removal of the action in the United States District Court for the Southern District of Florida. Shortly thereafter, Schachter and GSG,[20] Peppertree,[21] and AMLQ[22] respectively filed motions to dismiss. Schachter, GSG, Peppertree, and AMLQ also filed a motion to change venue[23] and a motion to compel arbitration.[24]

On May 9, 2022, plaintiffs moved for leave to amend the complaint, in which

---

[18]    *Id.* at 568.

[19]    *Id.*

[20]    Dkt 6.

[21]    Dkt 12.

[22]    Dkt 13.

[23]    Dkt 14.

[24]    Dkt 17.

6

plaintiffs proposed removing all claims against Peppertree and AMLQ.[25]  After the court denied that motion without prejudice,[26] plaintiffs filed an amended motion for leave to amend on May 13, 2022.[27]  On December 21, 2022, plaintiffs withdrew their motion for leave to amend.[28]

On May 18, 2022, plaintiffs moved to remand the case to state court.[29]  On July 18, 2022, the court denied the remand motion and transferred the action to this District.[30]

### Discussion

As an initial matter, the Court must determine the order in which to consider the pending motions.  If plaintiffs' claims are subject to arbitration, then determination of any pending merits motions properly would be left to the arbitrators.[31]  Accordingly, the Court turns first to the motion to compel arbitration..

---

[25]
    Dkt 25.

[26]
    Dkt 27.

[27]
    Dkt 35.

[28]
    Dkt 96; *see also* Dkt 97 (order withdrawing motion).

[29]
    Dkt 38.

[30]
    Dkt 66.

[31]
    *See, e.g.*, *Republic of Ecuador v. Chevron Corp.*, 638 F.3d 384, 393 (2d Cir. 2011) ("We will reach the merits of [plaintiff]'s claims only if they are fit for judicial determination.").

## I.    *Delegation of Arbitrability*

Under the Federal Arbitration Act, "the question of who decides arbitrability is itself a question of contract. The Act allows parties to agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying merits disputes."[32]  "When . . . parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator."[33]  This standard applies also to cases in which jurisdiction is based on the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention"),[34] which is the basis for the Court's jurisdiction here.[35]

The Arbitration Agreement states that any disputes must be settled by binding arbitration "conducted in accordance with the Commercial Arbitration Rules of the American Arbitration Association."[36]  Those rules state that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to . . . the arbitrability of any claim or counterclaim, without any need to refer such matters first to a court."[37]  Plaintiffs do not dispute

---

[32]

> *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 65 (2019).

[33]

> *Contec Corp. v. Remote Sol., Co.*, 398 F.3d 205, 208 (2d Cir. 2005).

[34]

> *Olin Holdings Ltd. v. State*, 73 F.4th 92, 105 (2d Cir. 2023); *Republic of Ecuador*, 638 F.3d at 394.

[35]

> Dkt 66 at 3–6.

[36]

> Dkt 31-27 at 49.

[37]

> Am. Arb. Ass'n, Commercial Rules and Mediation Procedures, R-7(a).

that they entered into the Arbitration Agreement.  The arbitrability of their claims against signatories

to the Arbitration Agreement — Peppertree and AMLQ — is delegated therefore to the arbitrators.

Whether the arbitrability of plaintiffs' claims against non-signatories to the

Arbitration Agreement has been delegated presents a closer call.  "[J]ust because a signatory has

agreed to arbitrate issues of arbitrability with another party does not mean that it must arbitrate with

any non-signatory.  In order to decide whether arbitration of arbitrability is appropriate, a court first

must determine whether the parties have a sufficient relationship to each other and to the rights

created under the agreement."[38]

In *Contec*, the Second Circuit held that such a sufficient relationship exists between

two entities that are functionally the same, but in different corporate forms.[39]  In a subsequent

unpublished decision, the Second Circuit held that "[w]here . . . the arbitration clause does not

clearly vest any right to invoke arbitration in a non-party . . . it does not afford [the non-party] the

right to have arbitrators rather than a court determine the arbitrability of its dispute."[40]  The court

distinguished *Contec* on the ground that the arbitration agreement there had been signed a prior

corporate form of the non-signatory and the parties to the arbitration agreement conducted

themselves as subject to the agreement.

In this case, the signatory defendants do not have a sufficient relationship with

Schachter and GSG such that plaintiffs agreed to delegate the arbitrability of claims against

---

[38]

*Contec*, 398 F.3d at 209.

[39]

*Id.* at 209 (non-signatory corporation could invoke delegation clause signed by a limited partnership, a previous form of the corporation).

[40]

*The Republic of Iraq v. BNP Paribas USA*, 472 F. App'x 11, 13 (2d Cir. 2012).

Schachter and GSG to an arbitrator.  Schachter and GSG are agents and counsel for the Company, which is a signatory to the Arbitration Agreement.  But they are not merely another form of the Company.  Accordingly, there is not "clear and unmistakeable evidence from the arbitration agreement . . . that the parties intended that the question of arbitrability" as to claims against non-signatories Schachter and GSG "shall be decided by he arbitrator."[41]

## II.    *Arbitrability of Claims Against Schachter and GSG*

The Schachter and GSG motion to compel arbitration is premised on the New York Convention.  "The Convention and the implementing provisions of the FAA set forth four basic requirements for enforcement of arbitration agreements under the Convention: (1) there must be a written agreement; (2) it must provide for arbitration in the territory of a signatory of the convention; (3) the subject matter must be commercial; and (4) it cannot be entirely domestic in scope."[42]  "A district court must grant a motion to compel arbitration unless these jurisdictional prerequisites are not met or one of Convention's affirmative defenses applies."[43]

Plaintiffs do not dispute that the four requirements set forth above are met here.  Rather, they contend that (1) the claims are not subject to the Arbitration Agreement, and (2) GSG and Schachter cannot invoke the Arbitration Agreement as non-signatories.

---

[41]    *Bell v. Cendant Corp.*, 293 F.3d 563, 566 (2d Cir.2002).

[42]    *Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 92 (2d Cir. 1999).

[43]    *Dumitru v. Princess Cruise Lines, Ltd.*, 732 F. Supp. 2d 328, 335 (S.D.N.Y. 2010).

A.     *Scope of Arbitration Agreement*

The Arbitration Agreement applies to "any controversy, claim or dispute arising out of or relating to or in connection with" the SHA.[44]  The SHA vests authority in the shareholders to enter into contracts and manage the legal operations of the company.  This provision provided the authority for the shareholders (1) to hire and fire Company management, and (2) to enter into the Framework Agreement.[45]  The disputes in this litigation — whether Gaitan had been removed from the position of CEO as of March 19, 2021, whether the Framework Agreement is void, and whether GSG and Schachter may represent the Company in the arbitration — therefore are determined by reference to the SHA.  Furthermore, as the Panel correctly determined, this dispute arises out of the SHA because "it relates to the trajectory of this arbitration and how the positions of the parties will be presented . . . ."[46]  The Company's representation in the context of an arbitration born of the SHA is inarguably "relating to or in connection with" the SHA.

Plaintiffs argue that their claims are not subject to arbitration because they "are completely untethered from the claims at issue in the Underlying Arbitration proceedings."[47]  Putting aside its questionable accuracy, this assertion is a non-sequitur.  The relevant inquiry is whether the Arbitration Agreement encompasses plaintiffs' claims, not whether any ongoing arbitration is addressing related claims.

---

[44]     Dkt 17-1 at 55.

[45]     *Id.* at 27–28.

[46]     *Id.* at 569.

[47]     Dkt 50 at 6–7.

B.    *Application to Non-Signatories*

The Second Circuit has "recognized a number of common law principles of contract law that may allow non-signatories to enforce an arbitration agreement, including equitable estoppel."[48]  "A non-signatory who attempts to compel arbitration under an estoppel theory must demonstrate that: (1) 'the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed,' and (2) the 'relationship among the parties . . . justifies a conclusion that the party which agreed to arbitrate with another entity should be estopped from denying an obligation to arbitrate a similar dispute with the adversary which is not a party to the arbitration agreement.'"[49]

As set forth above, the issue Schachter and GSG seek to resolve in arbitration falls squarely within the scope of the Arbitration Agreement.  The issue the non-signatories seek to resolve is not merely "intertwined" with the Arbitration Agreement — it is inextricable from the Arbitration Agreement and the ongoing arbitration proceedings.

"[I]n addition to the 'intertwined' factual issues, there must be a relationship among the parties of a nature that justifies a conclusion that the party which agreed to arbitrate with another entity should be estopped from denying an obligation to arbitrate a similar dispute with the adversary

---

[48]

*Ross v. Am. Express Co.*, 478 F.3d 96, 99 (2d Cir.2007); *see also GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 590 U.S. 432, 445 (2020) ("[T]he New York Convention does not conflict with the enforcement of arbitration agreements by nonsignatories under domestic-law equitable estoppel doctrines.").

[49]

*Medidata Sols., Inc. v. Veeva Sys. Inc.*, 748 F. App'x 363, 366 (2d Cir. 2018) (alteration in original) (quoting *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 127 (2d Cir. 2010)).

12

which is not a party to the arbitration agreement."[50]  Here, the Framework Agreement establishes a contractual relationship among Terra, Peppertree/AMLQ, and Schachter/GSG.  The dispute between Terra and Schachter/GSG arises out of that agreement and is the same as the dispute between Terra and Peppertree/AMLQ with respect to that issue.  Moreover, Terra litigated this precise issue before the Panel and opted to file this lawsuit only after the Panel ruled against Terra.[51]  The relationship among the parties therefore justifies a conclusion that Terra is estopped to deny an obligation to arbitrate its dispute with the Schachter and GSG.

### Conclusion

The motion to compel arbitration of plaintiffs' claims against defendants Telecom Business Solution, LLC, LATAM Towers, LLC, AMLQ Holdings (Cay) Ltd., Adam M. Schachter, and Gelber Schachter & Greenberg, P.A. (Dkt 17) is granted.  Plaintiffs' claims against these

---

[50]

*Sokol Holdings, Inc. v. BMB Munai, Inc.*, 542 F.3d 354, 359 (2d. Cir. 2008).

[51]

Although Terra objected to the Panel's jurisdiction to decide the issue, it did not file a motion to vacate the Panel's order on the grounds that it exceeded its powers, s*ee* 9 U.S.C. § 10(a)(4), instead opting to file a collateral lawsuit in another forum.

defendants are stayed.  The motions to dismiss (Dkt 6, Dkt 12, Dkt 13) are denied without prejudice to raising them in arbitration.

SO ORDERED.

Dated:    April 1, 2025

_____
Lewis A. Kaplan
United States District Judge